# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1768-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

T.H.,

      Defendant,

and

B.H.

      Defendant-Appellant.

_____

IN THE MATTER OF Br.H. and
Bri.H.,

      Minors.

_____

Argued February 11, 2019 – Decided February 22, 2019

Before Judges Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FN-03-0220-17.

Adrienne M. Kalosieh, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Adrienne M. Kalosieh, on the briefs).

Jennifer E. St. Mary, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Stephanie Kozic, Deputy Attorney General, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Melissa R. Vance, on the brief).

PER CURIAM

Defendant B.H.[1] appeals from an October 30, 2017 Family Part order[2] determining that he abused or neglected his eight-year-old son Br.H. (Billy) by repeatedly striking him with a belt. Defendant challenges the trial judge's finding that this conduct constituted abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b) and N.J.S.A. 9:6-8.21(c)(1). The Law Guardian supports the

---

[1]  We refer to defendants by initials, and to their child by a fictitious name, to protect their privacy. R. 1:38-3(d)(12).

[2]  This order became appealable as of right after the trial court entered an amended final order terminating the litigation on December 3, 2017.

judge's finding that the Division of Child Protection and Permanency (Division) met its burden of proving abuse or neglect by a preponderance of the evidence. Based upon our review of the record and applicable law, we affirm the judge's determination that defendant abused or neglected Billy by using excessive corporal punishment under N.J.S.A. 9:6-8.21(c)(4)(b).[3]

On April 25, 2017, Billy came to school wearing a band-aid above his right eye. When his teacher asked him what happened, Billy reported that defendant gave him a "whooping" the previous day because Billy left some uneaten food on a plate in his room, and the food had attracted ants. After the school reported this incident to the Division, it sent an investigator to the school to speak with Billy. The child told the investigator that defendant hit him numerous times with a braided belt that defendant "looped" together before beginning the beating. The child's shirt was torn as defendant attempted to stop him from getting away, and the belt also struck and cut Billy near his right eye.

---

[3] Because we conclude that there was sufficient credible evidence in the record to support the judge's finding that defendant abused or neglected Billy through the use of excessive corporal punishment under N.J.S.A. 9:6-8.21(c)(4)(b), we need not address the judge's alternate finding that defendant's conduct also created a risk of "protracted impairment" of the child's "physical or emotional health" under N.J.S.A. 9:6-8.21(c)(1).

A-1768-17T1

After the assault was over, Billy's mother, T.H., put some Neosporin and a bandage on the cut.[4]

The investigator took photographs of the numerous bruises and marks the beating left on the child. The investigator noted that Billy "had multiple belt marks that were on his left arm, all over the top part of his back[,] and on his left thigh." "The bruised areas were warm and tender to the touch." Billy told the investigator that he was scared of his father who "reminds him of 'the Hulk' when he [gets] mad. He seems bigger when he is mad and he is mad a lot."

Later that day, the investigator interviewed T.H. and defendant. Both parents admitted that defendant struck Billy with the belt on April 24, and that both parents had used a belt to discipline him in the past. Because of the danger to Billy, and his younger sister, the Division effectuated an emergency "Dodd removal"[5] of both children from the home. The children were placed with family

---

[4] The trial judge later found that T.H. was not in the child's room when the beating occurred, and he rejected the Division's argument that T.H. had also abused or neglected Billy because she did not intervene to stop defendant from striking him with the belt.

[5] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82." N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

friends until April 27, after defendant temporarily left the home until the matter was resolved.[6]

Stephanie Lanese, M.D., who was qualified as an expert in child abuse pediatrics at the two-day fact-finding hearing, testified that the Division asked her to examine Billy on April 26. Dr. Lanese found that during the beating two days earlier, Billy had sustained a 0.5 cm laceration on the side of his right eyebrow, which was now scabbed over. The child also had "parallel linear marks that are going along" his left upper arm, that were at least 8 cm in length. Dr. Lanese found multiple marks on Billy's upper back that went across the back, but were more concentrated on his left side. "There [was] more bruising on the left side as you go up to the left shoulder, almost a coalescing of several bruises together," but the linear pattern of the belt marks were still noticeable. Dr. Lanese found additional bruising on Billy's back left shoulder, and an oval-shaped bruise on his left thigh. Dr. Lanese noted that the bruises and marks were "starting to fade into [Billy's] normal skin color."

Dr. Lanese opined that the child's injuries were consistent with his account of having been "whooped" with a belt numerous times. Dr. Lanese also opined

---

[6] While he was out of the home, defendant had supervised parenting time with the children.

A-1768-17T1

that the psychological impact of the beating might have even more of a significant impact on the child's well-being than the physical injuries he sustained. She stated that

> [t]he most significant impact for the child is psychological and has the potential for long-term negative consequences. It is important that he be referred to a clinical mental health provider for evidence-based trauma-focused therapy for physical abuse, which can be done with the offending caretaker, as caregiver involvement is critical to address coercive interactions and decrease the risk for future physical abuse.

Neither defendant nor T.H. testified at the hearing. Defendant presented the testimony of Robert Stratton, Jr., M.D., J.D., who was qualified as an expert in child abuse.[7] Unlike Dr. Lanese, Dr. Stratton never examined or interviewed Billy and, instead, based his testimony solely upon his review of the available reports. Dr. Stratton opined that the marks and bruises Billy sustained "were likely due to corporal punishment that was within the parents['] belief as being reasonable." He also stated that the cut above the child's eye "could likely be explained by an accidental wound from a fingernail." In his written report, Dr. Stratton stated that even though he believed defendant's behavior constituted

---

[7] Defendant also called a Division permanency worker to confirm that defendant and T.H. had completed the parenting classes and other therapeutic services required by the Division.

A-1768-17T1

ordinary, rather than gross, negligence, defendant "failed to behave with the level of care that someone of ordinary prudence would have exercised under the same circumstances."

At the conclusion of the hearing, Judge Mark P. Tarantino rendered a thorough oral decision, finding that the Division had established by a preponderance of the evidence that defendant abused or neglected Billy by beating him with a belt. The judge found that the sheer number of bruises and marks found on the child, and the fact that they were across several different areas of his body, evidenced the "extensive" and "traumatic" nature of the assault he sustained at the hand of defendant. Although the child's physical injuries would fade over time, the judge stated that based on Dr. Lanese's expert opinion, which the judge found to be credible,[8] the child would suffer "psychological damage for a long time and hopefully [that] can be addressed in therapy, which the physician arranged." This appeal followed.

---

[8] On the other hand, Judge Tarantino did not find Dr. Stratton's testimony to be persuasive. In so ruling, the judge explained that the doctor embellished his testimony and failed to focus on the psychological harm to the child. The judge also found that the expert's testimony that the cut near Billy's "eye could have been inadvertent" was "contrary to the she[e]r weight of the evidence in the case" and was "simply not credible or even reasonable."

A-1768-17T1

On appeal, defendant contends that the Division "failed to prove by a preponderance of the evidence that [defendant] was excessive in disciplining [Billy], resulting in physical and emotional impairment."  We disagree.

Our task as an appellate court is to determine whether the decision of the family court is supported by substantial credible evidence in the record and is consistent with applicable law.  Cesare v. Cesare, 154 N.J. 394, 412 (1998).  We owe particular deference to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise[.]"  Id. at 413.  Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance.  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).  "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision.  N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Through the admission of "competent, material and relevant evidence," the Division must prove by a preponderance of the evidence that the child was

8

abused or neglected.  N.J.S.A. 9:6-8.46(b).  In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(b) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]

Each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive" and "idiosyncratic."  N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011).  Both the nature of the injury inflicted and the conduct should be reviewed within the context of the family's circumstances at that moment.  See Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414, 416 (App. Div. 2010).

"'[E]xcessive corporal punishment" entails physical punishment that results in "bruises, scars, lacerations, fractures, or any other medical ailment suffered as a result of [a parent's] actions."  P.W.R., 205 N.J. at 35-36; See also Dep't of Children & Families v. K.A., 413 N.J. Super. 504, 510-11 (App. Div. 2010) (citing to N.J.A.C. 10:129-2.2(a)(9), now recodified as N.J.A.C. 3A:10-

2.2(a)(9), which lists examples of abuse or neglect, including "[c]uts, bruises, abrasions, [or] welts").

Courts focus on "the harm suffered by the child, rather than the mental state of the accused abuser," and a single occurrence of corporal punishment may be deemed excessive. K.A., 413 N.J. Super. at 511. For example, in New Jersey Division of Youth & Family Services v. M.C. III, 201 N.J. 328, 333-35 (2010), the defendant chased down his two teenage children, caught and grabbed them, and all three ended up on the floor. Both children were injured. Id. at 335. One child sustained a bruised and swollen hand, while the other had rib tenderness and an abrasion behind the ear. Ibid. The Supreme Court held that, although the defendant "may not have intended to harm his children, his actions were deliberate" and constituted abuse because he "intentionally grabbed the children and disregarded the substantial probability that injury would result from his conduct." Id. at 345.

Similarly, in C.H., we found that a mother who struck her five-year old child with a paddle for telling a neighbor the family did not have electricity in their home had inflicted excessive corporal punishment. C.H., 416 N.J. Super. at 416-17. The mother admitted to using corporal punishment since the child was three years old, and she struck the child once or twice a month "as her way

to ensure that [the child] would not 'end up on the streets or doing drugs.'" Id. at 417. In the incident which led to the Division's involvement, the child sustained three- to four-inch red marks on the right side of her face, two-inch dark red scratches on her elbow and left cheek, and a greenish mark on her back. Id. at 416. On the other hand, in P.W.R., the Supreme Court concluded that "[a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute 'excessive corporal punishment[.]'" P.W.R., 205 N.J. at 36.

Here, there was ample evidence to support Judge Tarantino's conclusion that defendant abused or neglected his eight-year-old son by repeatedly striking him with a belt causing the child to receive numerous bruises and marks over several different parts of his body, and a cut near his eye. Defendant admitted "whooping" his son, and Billy's injuries were amply corroborated by the testimony of the Division's investigator, who took photographs that graphically depicted the linear nature of the marks inflicted during the beating, and by the Division's expert, who catalogued them in her testimony.

Unlike the defendant in C.H., defendant did express remorse for his actions, and engaged in appropriate services to address his future behavior. However, we have long observed that even "a single incident of violence against

a child may be sufficient to constitute excessive corporal punishment[,]" <u>K.A.</u>, 413 N.J. Super. at 511, particularly where, as here, it results in physical injuries such as bruises. <u>P.W.R.</u>, 205 N.J. at 35-36. In addition, a caregiver's post-incident conduct does not excuse past abuse or neglect, and case law now requires us to look not only at the risk of harm as of the time of the abuse and not at the time of the hearing. <u>See</u> <u>Dep't of Children & Families, Div. of Child Protection & Permanency v. E.D.-O.</u>, 223 N.J. 166, 189 (2015). Under these circumstances, we discern no basis for disturbing Judge Tarantino's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1768-17T1