# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2084-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

A.A.

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.A.,
C.A., Kh.A., and Ki.A.,

      Minors.

_____

          Submitted January 30, 2019 – Decided March 11, 2019

          Before Judges Accurso and Moynihan.

          On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0070-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Celeste Dudley-Smith, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Joshua P. Bohn, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant A.A. (Arlene) appeals from a Family Part order finding she abused and neglected four of her grandchildren with whom she lived: Kim, Kathy, Caitlin and Amber, born in 1999, 2001, 2011 and 2012, respectively.[1] After a fact-finding hearing, N.J.S.A. 9:6-8.44, the Family Part judge entered the order that provided the facts he found established abuse and neglect:

> All four children were subjected to excessive corporal punishment and physical abuse by their grandmother including repeatedly being hit with a belt and the older children were slapped and choked. The grandmother also repeatedly screamed and cursed at the children and threatened them with physical abuse.

---

[1] We use the pseudonyms for defendant, the children and defendant's daughter that are set forth in defendant's brief to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(e). No disrespect is intended.

Defendant argues reversal is required because the record is barren of any "evidence the children were actually harmed or subjected to a substantial risk of imminent danger" and that any corporal punishment inflicted "was not excessive as a matter of law." We disagree and affirm.

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). "A reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by 'adequate, substantial and credible evidence' on the record." N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We accord particular deference to credibility determinations made by the trial judge, and we recognize the special expertise of those judges assigned to the Family Part. See Cesare, 154 N.J. at 411-13. "'[W]here the focus of the dispute, [however,] is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' the traditional scope of review is expanded. Still, even in those circumstances we will accord deference unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" M.M., 189 N.J. at 279 (third alteration in original) (internal citation omitted)

(first quoting J.T., 269 N.J. Super. at 188-89; and then quoting C.B. Snyder

Realty Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

The Division presented three witnesses at the fact-finding hearing: Kim, a Division investigator and a Monmouth County Prosecutor's Office detective. Kim testified that eighteen audio recordings she made were examples "of what it was like in [her] house on a regular basis."[2] Kim identified Arlene as the person in discrete recordings: (1) telling Amber, "if you don't shut up I'm going to come in there and punch you in the mouth"; (2) saying, as Kim prepared to wash Caitlin, "You're a fucking bitch. You don't give no God damn (inaudible)"; and (3) warning, "One more time. All of my babies, one more time. I coming there and wear you out," a phrase Kim said was an expression that meant she was going to beat them. Kim testified that a recording of children screaming and crying evidenced Arlene beating either Amber or Caitlin. And, in a recording that Kim first played for the Division investigator, Kim identified a

---

[2] The transcriber of the fact-finding hearing was unable to decipher some of the recordings, labeling them "inaudible – unable to transcribe." We listened to the recordings entered in evidence at the hearing and, although we were able to hear expletive-filled rants that the transcriber did not set forth in the record transcript, we did not consider them because the judge did not make specific findings regarding that evidence.

A-2084-17T1

child heard screaming as Amber during a beating Arlene administered with a belt.

The Division investigator testified that she played the audio of the belt-beating for Arlene and questioned her about it. Arlene told the investigator that, although she did not remember the beating, she was just having a bad day. The investigator also related Arlene's admission to spanking Amber and Caitlin with a belt, "[b]ut her words were she doesn't beat them, she disciplines them."

Kim, on direct examination, also described a history of physical punishment by Arlene. When Kim was younger, Arlene administered "beatings just like them," meaning those Arlene later gave to Amber and Caitlin; she recalled being hit with a shoe, a belt and Arlene's hand. The discipline "dwindled down" as Kim got older; nonetheless, Arlene smacked her in the face and choked her. Kim testified Kathy suffered the same punishments.

She also claimed prior to the Division's involvement, Arlene had beat, yelled at, and smacked Amber and Caitlin or had sent them to their rooms "almost every day." During that same time frame, Kim said she saw bruises on Amber "one time," indicating they were about the size of a half dollar, "up and down her legs . . . from getting beat." She testified she also saw bruises on Caitlin's back, "[l]ike . . . marks from the belt."

 A-2084-17T1

The Prosecutor's Office detective authenticated recordings of interviews he conducted with Amber and Caitlin which were played and introduced into evidence at the fact-finding hearing. Amber told the detective, "Grandmommy always beats us with a belt." She later detailed that her grandmommy hit her with two belts in the legs and buttocks "[b]ecause we act bad." Amber also said Caitlin was also hit with a belt "a lot of times." She also told the detective the belt left marks or a bump. During her September 12, 2016 interview, Caitlin said, "My grandma is beating us. We got marks on us." She clarified that Arlene beat her and Amber with a belt "[b]ecause sometimes we are bad."

The evidence presented supported the judge's findings that Amber and Caitlin "seemed extraordinarily credible in describing that they were beaten with belts." He also found the "descriptions of all four children [were] so similar in nature, they corroborate[d] one another."

The judge, however, did not base his findings solely on the children's statements. See N.J.S.A. 9:6-8.46(a)(4) (providing, in part, that in a fact-finding hearing, N.J.S.A. 9:6-8.44, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect"); see also N.J. Div. of Child Protect. &

A-2084-17T1

Permanency v. N.B., 452 N.J. Super. 513, 522-24 (App. Div. 2017) (holding the consistency of children's hearsay statements, even if found reliable, "does not constitute corroboration" under N.J.S.A. 9:6-8.46(a)(4)). The totality of the circumstances from which the judge adduced that Arlene inflicted excessive corporal punishment, included his recount of what he heard when he listened to the corroborating recording of Amber being beaten: "And that belt kept coming – I heard whip sounds. It went over and over and over. This wasn't even one or two issues. It's over and over that was done on [Amber]. And heard her crying out and screaming, and she didn't stop. She just kept going." That audio tape, the judge found, "clearly seemed to demonstrate the sound of multiple belt injuries . . . being placed on the child . . . ." The judge determined from the other recordings that "there is an extreme anger involved here with [Arlene]." He also determined that Kim's account of Arlene slapping and choking her – the latter of which the judge said was "an extreme dangerous type of behavior" – "show[ed] a lot of anger, and lashing out by [Arlene]." The judge concluded "this was an atmosphere where [the children] were in fear of being beaten by belts."

A trial court's "determination that the child is an abused or neglected child must be based on a preponderance of the evidence and . . . only competent,

7

material and relevant evidence may be admitted." N.J.S.A. 9:6-8.46(b). Title

Nine, N.J.S.A. 9:6-8.21 to -8.73, which governs Division-initiated actions

alleging abuse and neglect of children, see N.J. Div. of Youth & Family Servs.

v. L.A., 357 N.J. Super. 155, 163 (App. Div. 2003), defines an "abused or

neglected child," in relevant part, as

> a child less than 18 years of age whose . . . physical,
> mental, or emotional condition has been impaired or is
> in imminent danger of becoming impaired as the result
> of the failure of his parent or guardian . . . to exercise a
> minimum degree of care . . . (b) in providing the child
> with proper supervision or guardianship, by
> unreasonably inflicting or allowing to be inflicted
> harm, or substantial risk thereof, including the
> infliction of excessive corporal punishment; or by any
> other acts of a similarly serious nature requiring the aid
> of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b); see also N.J.S.A. 9:6-
> 8.9(d) (defining "abused child" under Title Nine).]

Although the statute does not define "excessive corporal punishment,"

N.J.A.C. 3A:10-2.2 provides the classes of injuries that may amount to abuse or

neglect under this statute. They include, in part: "[c]uts, bruises, abrasions,

welts or oral injuries." N.J.A.C. 3A:10-2.2(a)(9). "[P]roof of injuries sustained

by a child . . . of such a nature as would ordinarily not be sustained or exist

except by reason of the acts or omissions of the parent . . . shall be prima facie

8

evidence that a child . . . is an abused or neglected child . . . ." N.J.S.A. 9:6-8.46(a)(2).

The judge's findings and legal conclusions, albeit not very detailed, bring this case in line with others where findings of excessive corporal punishment were upheld. We found excessive corporal punishment where a mother hit her five-year-old child "in multiple locations, including a vulnerable area[,]" causing demarcations on the child's face, right elbow, left cheek and back, and admitted to using corporal punishment on the child, starting at three years of age, once or twice per month. Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414, 416-17 (App. Div. 2010). Excessive corporal punishment was also found where a father, after having an argument with his children, choked his thirteen-year-old daughter and hit her stomach and back after grabbing his fifteen-year-old son by the neck. N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 334, 345 (2010).

Here, Arlene admitted "spanking" the children with a belt to discipline them. Not only did all four children testify about that beating and others, as well as the marks left by them, the audio recording buttressed their statements.

Although photographs of the injuries would have been compelling proof,[3] Kim's testimony explained that once the Division became involved, Arlene "tried not to hit [the children] because when she did hit them there were bruises sometimes on them." Moreover, the judge's findings regarding Arlene's continued belt-beating of Amber is clear evidence that the punishment was not a reasonable, "moderate correction," see State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002), but excessive.

Unlike the inapposite case of Department of Children and Families, Division of Youth and Family Services v. K.A., 413 N.J. Super. 504, 512 (App. Div. 2010), upon which Arlene relies, her beating of Amber was not an isolated, aberrant incident; nor was Arlene coping with a child on the autism spectrum or a like psychological problem. Nor was it justified, engendered only by the misbehavior of these four and five-year-old children or because Arlene was having a "bad day," see C.H., 416 N.J. Super. at 416 ("resolving whether abuse has occurred focuses upon the harm to the child 'rather than the mental state of the accused abuser'" (quoting K.A., 413 N.J. Super. at 511)).

---

[3] The merits brief submitted on behalf of the children claims Kim "took pictures of red welt marks on [Amber's] back"; no photographs, however, were placed in evidence at the fact-finding hearing.

A-2084-17T1

The judge's conclusion that Arlene inflicted excessive corporal punishment amounting to abuse is grounded in the record and is not "so wide of the mark that a mistake must have been made." M.M., 189 N.J. at 279 (quoting Snyder, 233 N.J. Super. at 69).

The Division concedes that the trial court "only found that Arlene physically abused the children; it did not make a finding of neglect based upon the older children caring for the younger children and the Division is not seeking a finding on that basis." We agree that the judge made no finding of neglect based on the care of the children. The judge, after finding facts, stated, "This is excessive corporal punishment." He went on to mention that the older children were taking care of the younger ones, and that Arlene was neglecting them, but did not make any express finding that the evidence established abuse and neglect. The judge ended his oral opinion by stating, "it was excessive corporal punishment that these children were exposed to. And I'm satisfied the Division has proven its case." The judge's order does not mention that neglect based on the older children's care of Amber and Caitlin was found. We need not reverse what was never decided.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2084-17T1