# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4863-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

  Plaintiff-Respondent,

v.

P.M.,

  Defendant-Appellant,

and

S.M.,

  Defendant.

_____

IN THE MATTER OF M.M.
and L.M.,

  Minors.

_____

Submitted September 11, 2019 – Decided September 17, 2019

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0378-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Janet Anne Allegro, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Travis A. Provost, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Olivia Belfatto Crisp, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant P.M.[1] appeals from an August 10, 2017 Family Part order[2] determining that he abused or neglected his two children by leaving his nine-month-old daughter L.M. (Lisa) laying naked and face-down outside on the porch in freezing temperatures, and his two-year-old son M.M. (Michael) on a bed near a broken window in his ransacked apartment. P.M. challenges the trial judge's finding that this conduct constituted abuse or neglect under N.J.S.A. 9:6-

---

[1] We refer to P.M. and his wife S.M. by initials, and to their children by fictitious names, to protect their privacy. R. 1:38-3(d)(12).

[2] This order became appealable as of right after the trial court entered a final order terminating the litigation on May 14, 2018.

8.21(c)(4)(b).  The Law Guardian supports the judge's finding that the Division of Child Protection and Permanency (Division) met its burden of proving abuse or neglect by a preponderance of the evidence.  Based upon our review of the record and applicable law, we affirm.

On December 22, 2016, the Newark Police Department made a referral to the Division regarding P.M.  According to the referral, S.M. had returned home from work[3] and discovered that her and P.M.'s apartment had been ransacked.  There were traces of blood and broken glass everywhere.  S.M. found Michael sitting under a blanket on a bed upstairs and close to a broken window.  S.M. was initially unable to locate Lisa, but after noticing and following a trail of blood, she discovered the infant laying naked outside on the porch.  After the police arrived, the children were taken to the hospital.  The hospital released Michael later that evening, but Lisa, whose body temperature was only 84.5 degrees when she was found, had to remain in the hospital overnight due to hypothermia and a head contusion.[4]

---

[3]  P.M. had been alone with, and in charge of, the children while S.M. was at work.

[4]  Upon returning home, the children continued in S.M.'s care, and P.M. was not permitted to have unsupervised contact with them.

A-4863-17T4

A Division Special Response Unit worker responded to the scene and investigated the complaint. S.M. informed the worker that although she left the children in P.M.'s care, he was missing when she returned home from work. After police located P.M. attempting to break into a school later that evening, he was also transported to the hospital. At the hospital, P.M. presented as irritable and paranoid and was found to be "a danger to [him]self, others, and property by reason of mental illness." P.M. remained in the hospital until his discharge on December 25, 2016.

S.M. told the Division worker that P.M. had been having trouble sleeping the past few nights and had previously been hospitalized for a mental health issue. Division worker Chrissy Fitz later interviewed P.M., who told her that he had no memory of the December 22 incident, but he had episodes like this about once a year. P.M. also stated that he had an "undiagnosed" mental illness. Although the hospital recommended that P.M. schedule an appointment with its behavioral health department, P.M. told Fitz he did not need to speak to anyone or take any medication for his condition.

A-4863-17T4

Following a fact-finding hearing at which this evidence was presented,[5] the trial judge found that the Division had established by a preponderance of the evidence that P.M. abused or neglected his children by leaving them unattended in an apartment amid blood and broken glass, and exposing them to freezing winter temperatures. As a result, Lisa suffered hypothermia and a head contusion and, although Michael escaped Lisa's fate, he was nevertheless placed in danger of sustaining similar harm. As the judge explained in his thorough oral opinion:

> [P.M.] acted in a grossly negligent or reckless manner by failing to address his mental health issues and leaving two very young children alone in frigid temperatures. Such conduct by [P.M.] posed a substantial risk of harm to his children and plac[ed] [them] at risk of imminent danger -- and, in fact, in [Lisa's] case, actual harm.

Following further proceedings, P.M. left the country and advised the court that he did not intend to return. Accordingly, the judge terminated the Title 9 proceedings, and this appeal followed.

On appeal, P.M. contends that the trial judge "erred in finding that P.M. committed an act of abuse or neglect" against the children. We disagree.

---

[5] Fitz was the only witness at the hearing. P.M. did not testify or present any witnesses on his behalf.

A-4863-17T4

Our task as an appellate court is to determine whether the decision of the family court is supported by substantial credible evidence in the record and is consistent with applicable law. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We owe particular deference to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise[.]" Id. at 413. Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Through the admission of "competent, material and relevant evidence," the Division must prove by a preponderance of the evidence that the child was abused or neglected. N.J.S.A. 9:6-8.46(b). In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(b) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of

becoming impaired as the result of the failure of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]

The statute thus requires the Division to make two showings: (1) the parent failed "to exercise a minimum degree of care" and (2) the parent "unreasonably inflicted or allowed to be inflicted harm, or created a substantial risk of inflicting harm." Dep't of Children & Families v. E.D.-O., 223 N.J. 166, 179 (2015); N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 180 (2014). Accordingly, each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive" and "idiosyncratic." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). Both the nature of the injury inflicted and the conduct should be reviewed within the context of the family's circumstances at that moment. See Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414, 416 (App. Div. 2010).

Our Supreme Court has interpreted a failure to exercise a minimum degree of care to mean parental conduct that is "grossly negligent or reckless." Y.N., 220 N.J. at 180 (quoting N.J. Div. of Child Prot. & Permanency v. T.B., 207 N.J. 294, 306 (2011)). For that reason, conduct that is merely inattentive or only

7

negligent is insufficient to support a finding of abuse or neglect.  Ibid.  (citing N.J. Dep't of Youth & Family Servs. v. J.L., 410 N.J. Super. 159, 168-69 (App. Div. 2009)).  Determining "[w]hether a particular event is to be classified as merely negligent or grossly negligent defies 'mathematical precision.'"  E.D.-O., 223 N.J. at 185 (alteration in original) (quoting Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538, 544 (App. Div. 2011)).

Under certain circumstances, leaving children alone or unsupervised can rise to the level of gross negligence or recklessness.  For example, this court found neglect where a parent left his ten-month-old child unsupervised on a twin bed without a railing near a hot radiator.  N.J. Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538, 545-46 (App. Div. 2011).  There, an older sibling discovered the infant on the floor against the radiator with severe burns all over his body.  Id. at 540-41.  Even though there was evidence that the parent had attempted to prevent the child from falling off the bed with blankets, this court determined that "'an ordinary reasonable person' would understand the perilous situation in which the child was placed, and for that reason, [the] defendant's conduct amounted to gross negligence."  Id. at 546.

By contrast, this court found that a parent's conduct did not rise to the level of gross negligence where she inadvertently, and under the mistaken belief

A-4863-17T4

his grandmother was home, left her four-year-old son unsupervised for two hours. T.B., 207 N.J. at 307. Because the mother saw the grandmother's car in the driveway and the two had an established childcare routine, this court reasoned that the mother's conduct was an isolated incident that "did not rise to the level of gross negligence or recklessness." Id. at 309-10. Even under those facts, however, this court acknowledged that it was a "close case." Id. at 300.

With respect to the second element, the Division must show that the parent "unreasonably inflicted or allowed to be inflicted, or created a substantial risk of inflicting harm." Y.N., 220 N.J. at 180 (citing N.J.S.A. 9:6-8.21(c)(4)(b)). If no evidence of actual harm exists, the question becomes whether a threat of harm exists. E.D.-O., 223 N.J. at 178. Although courts need not wait until a child is actually injured "the Division must show imminent danger or a substantial risk of harm to a child." Ibid. (citing N.J.S.A. 9:6-8.21(c)(4)(b), -8.46(b)).

Applying these principles to the facts of this case, we are satisfied that the trial judge properly concluded that the Division met its burden of demonstrating that P.M. abused or neglected both of his children by failing to exercise a minimal degree of care in adequately supervising them. As was the case in A.R., when P.M. left his infant children unattended on the night of December 22, he exposed both of them to a substantial risk of harm because they were both

exposed to the elements on a frigid evening. Indeed, Lisa sustained actual harm in the form of hypothermia after P.M. left her alone and naked on the outside porch. While defendant left Michael on a bed inside the apartment, he too was exposed to the icy temperatures because the bed was near a broken window. Given the young age of the children and the conditions in which P.M. left them, "'an ordinary reasonable person' would understand the perilous situation in which the child was placed." A.R., 419 N.J. Super. at 546. Under these circumstances, the judge's conclusion that P.M. abused or neglected his children is unassailable.

P.M.'s reliance on T.B. in support of his contrary position is misplaced because that case is readily distinguishable from the matter at hand. Unlike in T.B., where the mother mistakenly believed she was leaving her child in his grandmother's care, here, there was no evidence that P.M.'s decision to leave the children unattended and exposed to the elements was accidental. Therefore, we reject P.M.'s contention on this point.

P.M. also argues that there was "no credible evidence [presented] to support the trial [judge's] finding that P.M.'s untreated mental illness resulted in actual or imminent harm to the children." However, the judge did not base his finding of abuse or neglect solely upon P.M.'s admitted failure to treat the mental

illness he disclosed he had. Rather, the judge found that P.M. left his two young children alone on a freezing night without proper protection from the frigid temperatures. This finding, which is amply and unquestionably supported by the record, was more than sufficient to support the judge's conclusion that P.M. abused or neglected his children. Thus, the Division did not need to present an expert witness to demonstrate that P.M.'s mental illness presented an alternate or additional ground for this determination.

For this same reason, we also reject P.M.'s contention that the judge erred in relying on information contained in his medical records in his oral decision. The judge made only one fleeting comment about P.M.'s admission to hospital personnel that he engaged in bizarre behavior on an annual basis. As stated above, however, the judge concluded that P.M. abused or neglected the two infants by leaving them unsupervised and helpless against the elements on the night of December 22. Thus, the judge's brief reference to the medical record was, at most, a harmless error that was not "clearly capable of producing an unjust result." R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4863-17T4