# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5543-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.A.[1],

     Defendant-Appellant,

and

O.R. and J.T.,

     Defendants.

_____

IN THE MATTER OF H.A.,
Z.R., and A.A.-T.,

     Minors.

_____

[1] We use initials and pseudonyms to refer to the parties and children to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Argued telephonically[2] May 28, 2020 –
Decided July 14, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0144-17.

David A. Gies, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; David A. Gies, on the briefs).

Sara M. Gregory, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, on the brief).

James J. Gross, Designated Counsel, argued the cause for minor H.A. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; James J. Gross, on the brief).

Noel Christian Devlin, Assistant Deputy Public Defender, argued the cause for minors M.R., Z.R., and A.A.-T. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel Christian Devlin, on the brief).

---

[2] As ordered by the Supreme Court, all oral arguments heard by the Appellate Division during the Covid-19 public health emergency were conducted telephonically. https://www.njcourts.gov/notices/2020/n200315a.pdf

A-5543-18T1

PER CURIAM

The Chancery Division, Family Part found defendant R.A. abused and neglected her then twelve-year-old biological son H.A. (Harry), when she struck him multiple times on the head, face and body with "a miniature bat" approximately twelve inches in length, causing multiple bruises in different areas of the child's body and a laceration on his head that required medical intervention in the form of two surgical staples to his scalp. In this appeal, defendant argues her actions were merely a form of parental discipline through corporal punishment, which were not unreasonable, excessive, or legally abusive.

After considering the evidence presented by the Division of Child Protection and Permanency (Division) at a fact-finding hearing conducted pursuant to N.J.S.A. 9:6-8.44, and mindful of our standard of review, we reject defendant's arguments and affirm substantially for the reasons expressed by Judge Bernadette N. DeCastro in her memorandum of opinion dated January 6, 2017.

I

In addition to Harry, defendant has three biological daughters. All but two of the children have different biological fathers. S.C. is Harry's biological

father; J.T. is thirteen-year-old A.A.-T.'s (Amy's) biological father; and O.R. is the biological father of eleven-year-old M.R. (Michelle) and eight-year-old Z.R. (Zoey). These men were not named as parties in the complaint filed by the Division and are not part of this appeal.

On September 9, 2016, the Division received a referral from the Jersey City Medical Center (JCMC) after Harry was treated in the emergency room for multiple bruises and a laceration on his scalp. The Division dispatched two caseworkers to investigate. The Screening Summary documented that Harry lived with defendant and his three younger sisters. The incident that caused Harry's injuries occurred the previous day, on September 8, 2016. Defendant overheard her three daughters talking about an alleged incident involving inappropriate sexual acts by Harry with Amy and Zoey. Defendant became enraged when she learned of these allegations and "hit [Harry] with a bat on the leg, back, wrist, arm and head."

The JCMC medical staff treated Harry for blunt force trauma and contusions to his face, arms, and legs. Diagnostic procedures, such as x-rays of his forearm and wrist and a CT Scan of his cranium, did not reveal any internal injuries. Harry received two surgical sutures to close the laceration on top of

his head. The hospital discharged Harry, gave him Motrin for pain, and suggested he follow-up with his pediatrician.

Division caseworkers Melissa Stark and Jennifer Wisely interviewed Harry's sisters, O.R., and defendant. Stark and Wisely were also present when the children, O.R., and defendant were interrogated by detectives from the Hudson County Prosecutor's Office (HCPO). At Wisely's request, Michelle described the living arrangement at her home and defendant's strict disciplinary rules. Michelle said defendant did not allow "jumping, screaming or yelling . . . [and] no fighting, arguments or hitting each other." If she broke any of these rules, defendant hits her "with a belt."

Wisely did not prepare a verbatim account of her interview with Michelle. However, the following statement is taken directly from the report Wisely filed with the Division. Michelle told Wisely that she saw her mother "hit her brother with a bat" because she told her mother that Harry "made her sister[s,] [Amy] and [Zoey] suck his penis while [defendant] was at work. [Michelle] said that [Zoey] did it more than one time and [Amy] did it one time. [Michelle] stated that she has never sucked [Harry's] penis." Division records indicate that Michelle witnessed defendant strike Harry on the head with the wooden bat on his wrist, knee, arm, and face.

5

Michelle saw Harry's blood on the floor of the kitchen, bathroom, and inside the bathroom sink. She also saw Harry go to the bathroom to attend to his injuries. She claimed that at Harry's request, she told defendant that his head was still bleeding. According to Michelle, defendant merely responded: "okay." Before her daughters left the house to attend school the next day, defendant instructed them not to tell anyone about the incident. Michelle told Wisely that Harry did not go to school the next day "because his head was split open and because his face and wrists were swollen from being hit with the bat."

After completing this preliminary investigation, the Division executed an emergent removal of the children from defendant's custody and care without judicial authorization pursuant to N.J.S.A. 9:6-8.29. On that same day, the Division filed an Order to Show Cause (OTSC) and verified complaint against defendant predicated on allegations of physical abuse and neglect by inflicting excessive corporal punishment. The Family Part granted the Division's OTSC and scheduled the return date on September 13, 2016.

The Division's specific allegations against defendant were briefly summarized by the Deputy Attorney General (DAG), who appeared before Judge DeCastro on the return date of the OTSC. The DAG informed Judge DeCastro that the HCPO had arrested defendant based on the children's account

of defendant's use of excessive, physically abusive corporal punishment as a form of parental discipline. The charge of abuse and neglect was also predicated on defendant's failure to seek prompt medical attention for the injuries she inflicted on her twelve-year-old son when she struck him repeatedly with a small wooden bat. These injuries included a laceration to the boy's head that caused him to bleed profusely.

Division caseworker Melissa Stark testified at the OTSC hearing and described her personal observations of the injuries defendant inflicted upon Harry: "He had received a scalp laceration and he received two staples to his head. And there were contusions to his face, his arm, and I believe his leg. But there were no fractures and the CT Scan was negative." Stark also corroborated the girls' account of the events that caused their mother to strike Harry with the wooden bat. Stark also interviewed defendant and was present when Special Victims Unit detectives from the HCPO interrogated defendant.

Stark also testified that after his mother struck him with a bat, Harry stayed home the next day to conceal his injuries from his peers and his teachers. At some point that day, defendant called O.R. and asked him to pick up Harry and the girls. When O.R. saw Harry's injuries, he immediately drove him to the JCMC. Division intake-worker Jennifer Wisely also testified at the OTSC

hearing. She corroborated Stark's account of the events and also confirmed that Michelle told her that defendant hits her and her siblings with a belt when they misbehave.

Based on the record developed at the OTSC hearing, Judge DeCastro found the Division properly took immediate action to remove defendant's four children from her care and custody pursuant to N.J.S.A. 9:6-8.29. Judge DeCastro made the following findings in support of her ruling:

> Based on the representations of the complaint and the appendix . . . I do find the Dodd[3] was appropriate since at the time of the removal the mother had -- took a baseball bat and beat her son with the baseball bat causing serious injuries including a concussion and lacerations. She also hit him with a belt. At the time the mother was then arrested.
>
> . . . .
>
> As far as contrary to the welfare, I find it's contrary to the welfare of the children to be returned to the mother, since she physically abused her son as well as all the children. There are also concerns that there was sexual abuse going on between the children while in the mother's care.

---

[3] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.29. The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974." N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

On January 4, 2017, Judge DeCastro conducted a fact-finding hearing to determine whether the Division could prove, by a preponderance of the evidence, that defendant abused and/or neglected Harry on September 8, 2016, by using excessive corporal punishment. The Division again relied on the testimony of caseworkers Stark and Wisely. Defendant did not call any fact witnesses[4] nor testify in her own defense. Stark and Wisely reiterated the testimony they provided at the OTSC hearing and elaborated on the facts that formed the basis for this complaint against defendant.

After considering the arguments of counsel, Judge DeCastro reserved decision and thereafter entered an order dated January 6, 2017, supported by a memorandum of opinion, in which she found the Division proved by a preponderance of the evidence that defendant abused and neglected Harry in the form of excessive corporal punishment, in violation of N.J.S.A. 9:6-8.21c(4)(b). After reviewing the cases from the Supreme Court and this court that have addressed this issue, Judge DeCastro held:

> Here, the Division has presented competent, material and relevant evidence that shows that [defendant's] act of striking her son in the head with a wooden baseball bat placed the child at a substantial risk of harm and

---

[4] Without objection from the Division or the Law Guardian, Judge DeCastro granted defense counsel's request to allow defendant's maternal cousin to briefly address the court as a character witness. N.J.R.E. 608(a).

caused serious injury requiring medical treatment, for which she neglected to seek treatment for him. Moreover, this was not an aberrational response as alleged by defendant. The statements of all four children corroborated that she often would beat them with a belt. Her extreme reaction to her daughters' surprising claim of sexual abuse at the instigation of their brother cannot be condoned by this [c]ourt. Furthermore, she showed absolutely no remorse. Knowing that her son was bleeding, she failed to get him medical treatment. Moreover, when one of the girls' father finally took him to the hospital she did not even care enough to accompany him and only arrived at the hospital at the request of the Division.

Judge DeCastro concluded that defendant "failed to exercise a minimum degree of care" and "willfully" struck her twelve-year-old son with the functional equivalent of a club. She found defendant's actions were legally unjustifiable and caused her minor son to suffer a significant physical injury. The judge also found that defendant failed to seek prompt medical attention despite being aware of her son's injuries. Judge DeCastro held these material acts and omissions by defendant constituted excessive corporal punishment and parental neglect.

II

Defendant argues the Family Part erred when it found she inflicted excessive corporal punishment against Harry within the meaning of N.J.S.A. 9:6-8.21c(4)(b). She claims her reaction to use a twelve-inch long wooden bat

to discipline Harry after learning he sexually abused his two younger sisters was not an unreasonable or disproportionate form of corporal punishment. Defendant argues that this court's reasoning in N.J. Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504 (App. Div. 2010) supports her position and should be applied in this appeal. Alternatively, defendant argues the Division did not prove, by a preponderance of the evidence, that Harry's injuries were serious or protracted under N.J.S.A. 9:6-8.21c(1).

The Division and the Law Guardian urge us to uphold Judge DeCastro's findings because they are supported by substantial credible evidence in the record. The Division in particular argues the facts here are completely distinguishable from the facts that supported this court's holding in K.A. The Law Guardian concurs with the Division's position and emphasizes that in sharp contrast to the salient facts in K.A., the facts here revealed defendant's use of excessive physical violence as a form of discipline is a core principle of her parenting philosophy.

The criteria for sustaining or dismissing a complaint of abuse or neglect are delineated in N.J.S.A. 9:6-8.50. "The fact-finding hearing is a critical element of the abuse and neglect process. The judge, as the fact-finder, is there 'to determine whether the child is an abused or neglected child[.]'" N.J. Div. of

11

Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002); see also N.J.S.A. 9:6-8.44. Our scope of review from a fact-finding hearing conducted by the Family Part is narrow and deferential. "[F]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence" in the record. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

We give particular deference to a Family Part judge's fact-findings "[b]ecause of the Family Part's special jurisdiction and expertise in family matters[.]" N.J. Div. of Youth & Family Servs. v. T.M., 399 N.J. Super. 453, 463 (App. Div. 2008) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Thus, unless the Family Part's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007).

Parental rights include the right to take reasonable measures in disciplining a child, including corporal punishment. K.A., 413 N.J. Super. at 510 (citing State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002)). However, certain types of discipline, such as excessive corporal punishment,

can constitute abuse and neglect. N.J.S.A. 9:6-8.21c(4)(b) defines an abused

and neglected child as

> a child whose physical, mental, or emotional condition
> has been impaired or is in imminent danger of
> becoming impaired as the result of <u>the failure of his
> parent or guardian</u>, as herein defined, <u>to exercise a
> minimum degree of care</u> . . . <u>in providing the child with
> proper supervision or guardianship, by unreasonably
> inflicting or allowing to be inflicted harm, or
> substantial risk thereof, including the infliction of
> excessive corporal punishment</u>; or by any other acts of
> a similarly serious nature requiring the aid of the
> court[.]
>
> [(Emphasis added).]

"A determination of abuse must be shown by a preponderance of the evidence

in a fact-finding hearing." <u>K.A.</u>, 413 N.J. Super. at 510.

"'Excessive corporal punishment' is not defined by statute, but is

determined on a case-by-case basis." <u>New Jersey Div. of Youth & Family Servs.

v. S.H.</u>, 439 N.J. Super. 137, 145 (App. Div. 2015) (quoting <u>K.A.</u>, 413 N.J.

Super. at 510). Corporal punishment will be considered excessive when it is

"beyond what is proper or reasonable." <u>K.A.</u>, 413 N.J. Super. at 511. Further,

"a single incident of violence against a child may be sufficient to constitute

excessive corporal punishment." <u>Ibid.</u> The court in <u>K.A.</u> noted that certain types

of injuries inflicted by a parent may be considered per se excessive corporal punishment:

> A situation where the child suffers a fracture of a limb, or <u>a serious laceration, or any other event where medical intervention proves to be necessary, may be sufficient to sustain a finding of excessive corporal punishment, provided that the parent or caregiver could have foreseen, under all of the attendant circumstances, that such harm could result from the punishment inflicted</u>.
>
> [<u>Id.</u> at 511-12 (emphasis added).]

A finding of abuse requires "looking to the harm suffered by the child, rather than the mental state of the accused abuser, because '[t]he main goal of Title 9 is to protect children[.]'" <u>K.A.</u>, 413 N.J. Super. at 511 (alterations in original) (quoting <u>G.S. v. Dep't of Human Servs.</u>, 157 N.J. 161, 176 (1999)); <u>see</u> <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 N.J. 328, 345 (2010) (finding that although the defendant "may not have intended to harm his children, his actions were deliberate" because he "intentionally grabbed the children and disregarded the substantial probability that injury would result from his conduct").

In <u>K.A.</u>, this court held that the defendant mother, who punched her eight--year-old autistic child approximately four to five times in the shoulder after the child failed to follow directions, had not inflicted excessive corporal

14

punishment. 413 N.J. Super. at 513. We particularly noted that the defendant's actions were isolated and occurred during "the trying circumstances which [the defendant] was undergoing due to [the child's] psychological disorder." Id. at 512. Finally, the defendant showed remorse and took responsibility for her actions. Ibid. We also emphasized that

> [the defendant] was alone, without support from either her spouse/co-parent or from other members of her extended family, such as an experienced mother or aunt. Out of sheer frustration, or through an ill-advised impulse, she struck her child five times. These blows, though undoubtedly painful, did not cause the child any permanent harm, did not require medical intervention of any kind, and were not part of a pattern of abuse.
>
> [Ibid. (emphasis added).]

In N.J. Div. of Youth and Family Servs. v. P.W.R., 205 N.J. 17, 36 (2011), the Supreme Court held that "[a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute 'excessive corporal punishment' within the meaning of N.J.S.A. 9:6-8.21c(4)(b)." In reaching this decision, the Court noted that "by qualifying the prohibition with the term, 'excessive,' the statutory language plainly recognizes the need for some parental autonomy in the child-rearing dynamic that, of necessity, may involve the need for punishment." Ibid.

However, in <u>Dep't of Children & Families, Div. of Youth and Family Servs. v. C.H.</u>, 416 N.J. Super. 414, 416-17 (App. Div. 2010), we upheld a finding of abuse and neglect against a defendant who struck her five-year-old child with a paddle as a means of punishing the child for making a harmless comment to a neighbor.  Furthermore, the Division found the child had visible facial bruises and red marks approximately three to four inches in length, two-inch dark red scratches on her elbow and cheek, and a greenish mark on her back.  <u>Id.</u> at 416.  We also noted that the defendant did not appreciate the seriousness of these injuries nor exhibit any remorse for her conduct.  <u>Id.</u> at 417.

We applied these same principles in <u>New Jersey Div. of Youth & Family Servs. v. S.H.</u>, 439 N.J. Super. 137, 140 (App. Div. 2015), to reverse the Family Part's judgment finding that the defendant parent had not abused her fifteen-year-old son when she was involved in a physical altercation with the child.  The altercation "began with [her] throwing a shoe at him and progressed to hitting him with her hands, striking him with a golf club, and biting him on his shoulder."  <u>Id.</u> at 140.

The Family Part found that the defendant's actions did not rise to the level of abuse because the parent's actions were reasonably triggered by her son's use of disrespectful, vulgar language.  <u>Id.</u> at 143.  We explained:

> While we do not condone the use of coarse or vulgar language by a child when directed at a parent, we find no evidence in the record that [the child's] denial of his mother's accusation, which included a passing expletive, was intended to provoke [the defendant's] actions. Indeed, as the conflict escalated with [the defendant] throwing a shoe at [the child] he attempted to defuse it by leaving the room. It was [the defendant] who fueled the escalation by grabbing [the child] in an attempt to keep him in the room. The assault with the golf club and the biting followed.
>
> [Id. at 148]

We thus held that the defendant's actions were unreasonable and disproportionate to the child's conduct and constituted a form of excessive corporal punishment. Id. at 147-50. In reaching this conclusion we expressly distinguished the defendant's conduct from the "occasional slap" in P.W.R. and the comparatively minor injuries in K.A. Ibid.

Here, the facts are also distinguishable from K.A. and P.W.R. The extent of the injuries Harry sustained and the instrumentality used to cause these injuries differ greatly from K.A. and P.W.R. Harry's injuries required prompt medical attention for the laceration to his head and swelling on other areas of his body. The use of the wooden bat to strike a twelve-year-old child on the head with sufficient force to lacerate the scalp can have profound cognitive and/or neurological negative consequences. As we noted in K.A., a serious

17

injury requiring medical intervention is the type of parental discipline that is considered per se excessive corporal punishment. Finally, similar to the defendant in C.H., defendant here failed to show any remorse for her actions.

In this light, we affirm substantially for the reasons expressed by Judge DeCastro in her well-reasoned memorandum of opinion dated January 6, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5543-18T1