# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1779-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.F. and E.H.,

     Defendants,

and

J.F.,

     Defendant-Appellant.

_____

IN THE MATTER OF J.F., I.F.,
K.F., E.F., A.F., A.F., and J.F.,

     Minors.

_____

Submitted March 30, 2020 – Decided May 7, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0097-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Beatrix W. Shear, Designated Counsel, on the briefs).

Gurbir R. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christina Ann Duclos, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Cory Hadley Cassar, Designated Counsel, on the brief).

PER CURIAM

Defendant J.F. (Jay)[1] appeals from the Family Part's June 28, 2018 fact-finding order, finding that he abused or neglected his then five-year-old son, E.F. (Evan). See N.J.S.A. 9:6-8.21(c). Evan and his then four-year-old sister were arguing over a toy in the rear of the family's van. Seated near the two were their two-year-old and one-year old siblings. Meanwhile Jay and his wife, defendant K.F. (Kay), were arguing in the front. Jay told the children to "stop

---

[1] Pursuant to Rule 1:38-3(d), and for the reader's convenience, we use pseudonyms for the named parties.

fussing." When they did not, Jay threw his cellphone, striking Evan's face near his right eye, causing a laceration and a bruise that lasted for days.

Jay contends the court's decision was inconsistent with caselaw on excessive corporal punishment. He argues his action was an isolated incident; he did not intend to cause injury; he accepted responsibility; and the injury did not require medical attention. The Law Guardian supports the Division of Child Protection and Permanency (Division) in opposing the appeal.

We conclude there is sufficient credible evidence in the record to support the court's finding that Jay abused or neglected his son. Jay's legal arguments are unpersuasive. Therefore, we affirm.

I.

Jay is the father of seven children: three older boys with a mother other than Kay; and four children with Kay, including Evan, and his three younger siblings.

On November 14, 2017, the nurse at Evan's school reported to the Division that Evan was injured by his father. The injury consisted of a large dark purple bruise near Evan's right eye. When the Division caseworker, Natalie Jones, questioned Evan about the origin of his injury, he stated that Jay hit him with the cellphone "by accident." Evan said his father warned, "If you don't stop

3

fussing, I am going to throw this phone." Jay apologized and applied ice under Evan's eye. Evan said Jay hits him and his brothers with a belt if they do not follow the rules. In 2016, the Division established a prior incident in which Jay abused one of the older boys. See N.J.A.C. 3A:10-7.3(c) and -7.3(d) (defining an "established" finding of abuse or neglect). The Division conducted an emergency removal and placed all the children in resource homes. Jones interviewed the older children. They confirmed that Jay often hits them with belts and sticks. Jones also interviewed Jay. He denied hitting his children with belts or sticks. He also denied throwing his cellphone with the purpose to strike Evan. Jay said that when Evan and his four-year-old sister refused to stop fighting, he threw his phone upward to get their attention. He claimed he could not see Evan because it was dark in the car.

By the time the court held the fact-finding hearing the following June, the children had already returned home to Jay's and Kay's custody. Kay testified that Jay told the children to stop fussing, but she did not recall that he threatened to throw the cellphone before he did so. She described Evan's injury as about the size of a quarter with a small gash. She explained she kept Evan home from school for three days; she did not seek medical attention; and consulted a medical website for treatment information.

Dr. Steven Kairys, who examined Evan the day after the Division interceded, testified that the injury was "fairly wide and deep" and "could have used a few stitches to allow it to heal better without . . . scarring." However, there was no evidence of scarring by the time of the hearing. Although Dr. Kairys opined that the incident "seemed accidental," he said the incident raised "red flags" because of Jay's use of physical discipline in the past and his failure to take Evan to the doctor. Caseworker Jones testified the Division determined that the bruising and laceration near Evan's eye was abusive. The doctor's and the caseworker's reports were also admitted into evidence.

In its oral opinion, the court found that Jay's action was reckless and grossly negligent. The judge stated that "[Jay] felt frustration from a whole sort of web of circumstances that . . . caused him to physically throw his phone in the direction of his minor babies," injuring Evan. The judge stated:

> I'm satisfied that the facts of the night of November 10th were unreasonable, and excessive, and constituted gross negligence, and it was willful because he should have known better and he chose to ignore what he knew was inappropriate. I do find it was willful, wanton and grossly negligent.

The judge also found that Jay's actions were "reckless."

A-1779-18T4

II.

We defer to the Family Court's fact-finding because of the court's "special expertise" in family matters and the court's "superior ability to gauge the credibility of the witnesses who testify before it." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). Although we will not disturb a trial court's fact-finding "when supported by adequate, substantial, credible evidence," Cesare v. Cesare, 154 N.J. 394, 412 (1998), we scrutinize more closely a "trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (internal quotation marks and citations omitted). We review issues of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendant views his case through the lens of the statute and case law governing excessive corporal punishment. A child may be abused or neglected by inflicting excessive corporal punishment. See N.J.S.A. 9:6-8.21(c)(4)(b). The statute defines an abused or neglected child, in relevant part, as:

> a child less than 18 years of age whose . . . physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by

> unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, <u>including the infliction of excessive corporal punishment</u> . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b) (emphasis added).]

For the purposes of this appeal, we accept defendant's approach. Although defendant contends he did not intend to strike or corporally punish Evan at all, he conceded that he was attempting to discipline and control his son's behavior, and that of his younger sister, when he threw a cellphone in their direction. Since defendant's actions resulted in bodily harm, the authority governing excessive corporal punishment is relevant.[2]

The phrase "excessive corporal punishment" is not defined by statute. <u>N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A.</u>, 413 N.J.

---

[2]   As the statute provides, "infliction of excessive corporal punishment" is simply a subset of actions that "unreasonably inflict[] or allow[] to be inflicted harm, or substantial risk thereof" because of "the failure . . . to exercise a minimum degree of care." N.J.S.A. 9:6-8.21(c)(4)(b). "[A] minimum degree of care" is "conduct that is grossly or wantonly negligent, but not necessarily intentional." <u>G.S. v. Dep't of Human Servs., Div. of Youth & Family Servs.</u>, 157 N.J. 161, 178 (1999). A parent is wantonly negligent when he or she engages in conduct knowing that "injury is likely to, or probably will, result." <u>Ibid.</u> In other words, "willful and wanton misconduct implies that a person has acted with reckless disregard for the safety of others." <u>Id.</u> at 179. Without expressly characterizing defendant's actions as "excessive corporal punishment," the court evidently applied this more general standard. We discern no error in that respect, for many of the same reasons, discussed below, that one may find defendant resorted to excessive corporal punishment.

Super. 504, 511 (App. Div. 2010). As in abuse and neglect cases generally, excessive corporal punishment cases require a fact-sensitive analysis. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011); see also N.J. Div. of Youth & Family Servs. v. S.H., 439 N.J. Super. 137, 145 (App. Div. 2015) (stating that excessive corporal punishment cases are "determined on a case-by-case basis").

"[A] parent may inflict moderate correction such as is reasonable under the circumstances of a case." K.A., 413 N.J. Super. at 510 (quoting State v. T.C., 347 N.J. Super. 219, 240 (App. Div. 2002)). But, punishment is excessive when it exceeds "what is proper or reasonable." Id. at 511. The court's determination must focus on the harm caused to the child, not the parent's intent. N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 344 (2010); K.A., 413 N.J. Super. at 511.

Some foreseeable injuries may be sufficiently egregious to warrant a per se finding of excessive corporation punishment. See K.A. 413 N.J. Super. at 511-12. These injuries typically require "medical intervention," such as "a fracture of a limb, or a serious laceration." Id. at 511. If no per se injury is present, the fact finder must closely scrutinize the surrounding circumstances. See P.W.R., 205 N.J. at 33. Careful consideration must be given to the "nature

A-1779-18T4

and extent of the injuries" and the "instrumentalities used to inflict them." S.H., 439 N.J. Super. at 146. Additionally, courts should consider factors such as "(1) the reasons underlying [defendant's] action; (2) the isolation of the incident; and (3) the trying circumstances which [defendant] was undergoing . . . ." K.A., 413 N.J. Super. at 512. The age of the child is also an important factor. "[F]or example, one ought not assume that what may be 'excessive' corporal punishment for a younger child must also constitute unreasonable infliction of harm, or excessive corporal punishment in another setting involving an older child." P.W.R., 205 N.J. at 33. Our courts have also considered whether the defendant recognized his or her error, was remorseful, and open to receiving help. See S.H., 439 N.J. Super. at 147-48. The objective is to consider the "totality of the circumstances." Id. at 150.

The varying results in P.W.R., K.A., and a third case, Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414 (App. Div. 2010), demonstrate the fact-sensitive nature of the court's inquiry. In K.A. a mother hit her eight-year-old daughter four or five times on the shoulder with a closed fist because the child defied the mother's instructions to stay inside her room during a time-out. K.A., 413 N.J. Super. at 505-06. The strikes left a round bruise with several smaller dotted bruises above it on the child's shoulder.

Id. at 506. Applying the three factors identified above, we noted the child was diagnosed with "pervasive development disorder and attention deficient [sic] disorder" at the time of the incident. Id. at 506. The mother also lacked a support network and was overwhelmed by the difficulties in raising a disabled child largely on her own. Id. at 512. Additionally, the mother did not lacerate the child's skin, the child did not need medical intervention, and the visible bruises did not expose the child to further harm if left untreated. Ibid. The mother also took full responsibility for her actions, was contrite, and complied with the Division's services. Ibid. In light of those surrounding circumstances, we concluded there was no excessive corporal punishment. Id. at 512-13.

We reached a different conclusion in C.H.[3] In that case, the parent struck her five-year-old child with a paddle in "multiple locations, including a vulnerable area" – the face. C.H., 416 N.J. Super. at 416; 414 N.J. Super. at 476. There were "red demarcations on the right side of [the child's] face, three to four inches long, and . . . dark red scratches, two inches in length, on [the] right elbow and left cheek, as well as a greenish demarcation on the middle of

_____

[3] We initially affirmed the Division's finding that the defendant had committed an act of child abuse by inflicting excessive corporal punishment. Dep't of Children and Families, Div. of Youth and Family Servs. v. C.H., 414 N.J. Super. 472 (App. Div. 2010). We agreed to reconsider in light of K.A., and reaffirmed our previous decision. C.H., 416 N.J. Super. at 415-16.

the child's back." Ibid. As for the related circumstances, we discerned sufficient evidence in the record that the infliction of harm was not an isolated incident. Id. at 416-17. The parent admitted she began administering corporal punishment when the child was three, and had spanked the child most recently because she told a neighbor the family did not have electricity. Ibid. The parent also expressed no remorse and declined to participate in counseling. Id. at 417.

In P.W.R., the Court upheld the Division's finding that an allegation of excessive corporal punishment was unfounded, where a parent occasionally slapped a sixteen-year-old daughter in the face as a form of discipline. 205 N.J. at 21-22. The Court stated, "There was no evidence developed in this record showing the existence of bruises, scars, lacerations, fractures, or any other medical ailment[.]" Id. at 35-36 (citing K.A., 413 N.J. Super. at 511-12). The Court also held that the age of the child punished was a relevant factor. See id. at 33. While not approving corporal punishment, the Court stated, "[T]he statutory language plainly recognizes the need for some parental autonomy in the child-rearing dynamic that, of necessity, may involve the need for punishment." Id. at 36.

Turning to the case before us, Jay contends the circumstances here are similar to those in K.A. and unlike those in C.H., and for that reason, the court's abuse or neglect finding cannot be sustained. We are not persuaded.

In contrast to K.A., there is no evidence that Evan had any psychological issues, or that Jay adequately attempted to remedy the situation via non-corporal means of discipline. Unlike the single parent in K.A., Jay enjoys the support and assistance of his wife. While the mother in K.A. struck her daughter in the shoulder with her hand, Jay struck Evan in the vulnerable facial area, near the eye, with a hard projectile. Furthermore, Jay inflicted the injury on a five-year-old, and risked injuring his younger siblings. Jay's admission that throwing the phone was "bad judgment" also falls short of accepting full responsibility for his action.

Instead, this case has parallels to C.H. Like this case, C.H. involved a five-year-old, struck in a vulnerable area. And, as in C.H., Jay's action was not an isolated incident; the Division established a prior incident in which he abused one of his older sons. Also, as in C.H., Jay struck his son with an instrument. See also S.H., 439 N.J. Super. at 146-47 (noting that "use of an instrument to hit the child with such force that visible marks were left" was a factor demonstrating use of excessive corporal punishment); N.J. Div. of Youth & Family Servs. v.

A-1779-18T4

B.H., 391 N.J. Super. 322, 335, 340 (App. Div. 2007) (affirming finding that mother used excessive corporal punishment when she hit her six-year-old son with a belt in the face and elsewhere, leaving a welt).

Not only did Jay use an instrument, he used it as a projectile. Under the circumstances, that fact lent additional support for the court's finding that Jay was reckless. When throwing an object at another, a person runs a natural risk of missing the target. Even assuming Jay was aiming above the children's heads as he contended, he ignored the risk he would miss and strike one of his children instead.[4]

Jay highlights the caseworker's statement that she only observed a "small laceration" around Evan's eye, and the school nurse's statement that Evan's injury "did not require immediate medical attention." On the other hand, Dr. Kairys testified that Evan's bruise could have used stitches to allow it to heal better without scarring. The fact that the injury ultimately healed adequately without medical attention, does not justify Jay's refusal to seek medical attention, or even to call a pediatrician, shortly after the incident. In any event,

---

[4] We do not intend to suggest that throwing an item at a child is necessarily worse than wielding it. As we have emphasized, these determinations are fact-sensitive. For example, tossing a pillow or a cloth belt at a child may pose far less risk than forcefully swinging it at the child.

Evan's recovery without medical attention does not compel reversal in light of the totality of the circumstances. In C.H., the child's injuries did not require medical attention. 414 N.J. Super. at 476.

Finally, Jay's contention that he did not intend to injure Evan does not warrant disturbing the court's finding. If the act or omission is intentionally done, "whether the actor actually recognizes the highly dangerous character of [his or] her conduct is irrelevant," and "[k]nowledge will be imputed to the actor." G.S., 157 N.J. at 178. "Where an ordinary reasonable person would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences, the law holds him responsible for the injuries he causes." Id. at 179. Even if Jay did not intend to strike Evan, he intentionally threw his cellphone in the confined space of a van occupied by four small children. He admitted he wanted to get their attention. Presumably, that required at least invoking in the children the fear they could be struck. Thus, he acted without regard for the serious consequences that could follow.

In sum, the evidence amply supported the court's finding that defendant failed to exercise a minimum degree of care by unreasonably inflicting harm upon his son.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1779-18T4