# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3991-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J..J.-H.,

     Defendant-Appellant,
and

J.H., F.J., and G.H.,

     Defendants.,

_____

IN THE MATTER OF JO.H.
and J.H., minors.

_____

Submitted April 26, 2021 – Decided July 29, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-0825-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Patricia Nichols, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for minor Jo.H. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo E. K. Hirsch, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for minor J.H. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Damen J. Thiel, Designated Counsel, on the brief).

PER CURIAM

Defendant appeals from a June 7, 2019 Family Part order finding she abused/neglected her ten-year-old great-nephew, J.H.,[1] by administering excessive corporal punishment, N.J.S.A. 9:6-8.21(c). Defendant does not dispute she struck J.H. with a belt as punishment for the child's behavior at school but challenges the trial court's finding that the corporal punishment was excessive. She also contends she was denied counsel at critical stages of the

---

[1] We use initials to protect the identity of the child. R. 1:38-3(d)(12).

2

A-3991-19

litigation and that the attorney who was eventually appointed to represent her rendered ineffective assistance. After carefully reviewing the record in view of the applicable legal principles, we reject defendant's contentions and affirm.

I.

On June 22, 2018, the Division of Child Protection and Permanency (the Division) filed a verified complaint and order to show cause (OTSC) for custody of J.H. and Jo.H.[2] The Division completed its investigation in August 2018. A fact-finding hearing was scheduled for October 18, 2018 but was postponed for nearly four months because defendant filled out a form requesting representation by the Public Defender just before the hearing began. The fact-finding trial occurred on February 25 and June 7, 2019. The court rendered a comprehensive oral opinion, finding that defendant abused/neglected J.H. by inflicting excessive corporal punishment. On April 15, 2020, the court conducted a virtual hearing and issued an order terminating litigation, finding that the conditions had been remediated.

We briefly recount the facts relevant to this appeal that were adduced at the fact-finding hearing. J.H. is on the autism spectrum and receives treatment

---

[2] Jo.H. is defendant's fourteen-year-old biological child.

A-3991-19

for Attention Deficit Hyperactivity Disorder. The child engages in certain self-harming behaviors and attends a specialized after-school program.

In 2015, the child was removed from the custody of his biological mother and was eventually placed in defendant's care.[3] On Monday, June 18, 2018 the Division received a Child Protective Service referral from J.H.'s elementary school. The child approached the school nurse with a bruise on his left arm and told the nurse he was beaten with a belt the preceding Friday evening. J.H. explained he was punished because he had not done his homework and because a teacher had called defendant to report that he was misbehaving at school.

Division caseworker Isaac Hatten went to the school to investigate the report. Hatten observed "long diagonal fresh marks" on J.H.'s upper and mid back. Hatten also saw old marks on both arms, throughout the child's chest and abdomen, and on both legs. When Hatten asked J.H. to indicate where he was hit with the belt, the child pointed to the area with the fresh marks. Hatten took photographs of J.H.'s back and arm.

Hatten next interviewed defendant, who admitted to spanking J.H. three times with a belt. When asked about the June 15, 2018 incident, she reported that she had tried to spank J.H.'s legs, but because he kept moving, she spanked

---

[3] The child spent some time in foster care before being placed with defendant.

him on the arm instead. Defendant denied spanking him on his back. Hatten interviewed additional family members at the home as part of his thorough investigation.

The next day, Hatten and his supervisor discussed the case and determined that a Dodd[4] removal of J.H. and Jo.H was warranted based on the severity of the bruises on J.H.'s back. Hatten prepared an investigation summary in which he made the following findings:

> Allegations that [defendant] physically abused [J.H.] are [s]ubstantiated. There is a preponderance of evidence that establishes that [J.H.] is an abused child as defined by definition. The aggravating factors taken into account are significant lasting physical and psychological impact on [J.H.]. [J.H.'s] safety required separation from [defendant]. Evidence suggests a pattern of abuse by [defendant] towards [J.H.].

Doctor Stephanie V. Lanese examined J.H. on June 27, 2018 and prepared a report. She determined "based on this history and the photographs taken by Child Protection and Permanency, the marks on their photographs are consistent with being hit with a soft looped object, such as a belt."

---

[4] A "Dodd removal" is an emergency removal of a child from the custody of a parent without a court order, as authorized by N.J.S.A. 9:6-8.29, a provision included within the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82.

A-3991-19

Caseworker Hatten and Dr. Lanese testified for the Division at the fact-finding hearing. The court found both witnesses to be credible. The court remarked that Hatten "was prepared to testify; he gave prompt answers; he was intelligent; he had good tone and even demeanor; he was professional in his presentation; I found his answers to be candid; his testimony was reasonable; he provided good, clear explanation. I find him to be inherently believable."

As to Dr. Lanese, the court noted:

> [She] was qualified, as the parties stipulated, as an expert in pediatric childcare. The [c]ourt finds her to be very credible. She was prepared to testify; she had great eye contact; she's intelligent; experienced; she had a very professional demeanor; she gave straight answers; she didn't embellish; she was reasonable; she was very candid in cross-examination . . . she gave good explanations; she was inherently believable.

The court also reviewed various reports and photographs. Based on the evidence adduced by the Division, the court concluded the corporal punishment administered by defendant was excessive, constituting abuse/neglect.

Defendant raises the following arguments for our consideration:

POINT I

THE RECORD DID NOT PROVIDE THE TRIAL COURT SUFFICIENT EVIDENCE ON WHICH TO BASE THE FINDINGS OF FACT OR CONCLUSIONS OF LAW MADE.

A-3991-19

POINT II

BECAUSE [DEFENDANT] WAS DENIED COUNSEL FOR CRITICAL PROCEEDINGS AND HER ASSIGNED COUNSEL FAILED TO FULFILL THE OBLIGATION TO PROVIDE FAITHFUL AND ROBUST PARTISAN REPRESENTATION, [DEFENDANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED TO HER, THUS THE JUDGMENT MUST BE REVERSED (not raised below).

 A. DENIAL OF COUNSEL FOR MONTHS OF LITIGATION.

 B. COUNSEL, ONCE ASSIGNED, WAS INEFFECTIVE.

  a. NOT OBJECTING TO EMBEDDED HEARSAY IN DOCUMENTS AND TESTIMONY OF WITNESSES.

  b. NOT BEING PREPARED TO SUPPORT HIS OBJECTION TO HATTEN'S TESTIMONY ON WHAT, IF ANY, INSTRUMENT MAY HAVE CAUSED THE MARKS DEPICTED IN PHOTOGRAPHS IN EVIDENCE.

  c. NOT OBJECTING TO DCPP'S CLOSING ARGUMENT AT TRIAL.

   i. NOT OBJECTING TO PREJUDICIAL COMMENTS ON [DEFENDANT'S] ABSENCE, [DEFENDANT'S] NOT TESTIFYING AND

[DEFENDANT'S] NOT PRESENTING EVIDENCE.

ii. NOT OBJECTING TO REFERENCES TO FACTS NOT IN EVIDENCE.

iii. NOT OBJECTING TO REFERENCES TO THINGS THAT NEVER HAPPENED.

d. DEFECTS IN THE DEFENSE CLOSING ARGUMENT AT TRIAL.

e. FAILURE TO ADDRESS INATTENTIVENESS TO THE TITLE 30 CARE AND SUPERVISION CASE REGARDING [Jo.Ha.].

f. NOT OBJECTING TO ERRORS IN THE TRIAL COURT'S OPINION.

g. CONCLUSION.

II.

We first address defendant's contention that the trial court's finding of abuse/negligence was not supported by sufficient credible evidence. We begin our analysis by acknowledging the legal principles governing this appeal.

We defer to the fact-findings by the Family Part because of its "superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." <u>N.J. Div. of</u>

Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)); see also N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010) (fact findings that are supported by "substantial credible evidence in the record" are to be upheld); N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (an appellate court defers to the trial court's credibility determinations, evaluation of the underlying facts, and inferences drawn therefrom unless they are "so wide of the mark that a mistake must have been made.") (quoting C.B. Snyder, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). Questions of law, in contrast, are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

To establish abuse or neglect, the Division must show by a preponderance of the "competent, material and relevant evidence" that the child is "abused or neglected" as defined in N.J.S.A. 9:6-8.21. N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 242, 260–65 (App. Div. 2002). Under this statutory framework, an abused or neglected child is defined as

> a child less than 18 years of age whose . . . physical, mental, or emotional condition has been impaired or is

in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, <u>including the infliction of excessive corporal punishment</u> . . . .

[N.J.S.A. 9:6-8.21(c)(4)(b) (emphasis added).]

The phrase "excessive corporal punishment" is not statutorily defined and as a result, abuse and neglect cases arising on this ground require a fact-sensitive analysis. <u>N.J. Div. of Youth & Family Servs. v. P.W.R.</u>, 205 N.J. 17, 33 (2011); see also <u>N.J. Div. of Youth & Family Servs. v. S.H.</u>, 439 N.J. Super. 137, 145 (App. Div. 2015) (stating that excessive corporal punishment cases are "determined on a case-by-case basis"). The law of this State recognizes "'a parent may inflict moderate correction such as is reasonable under the circumstances of a case.'" <u>N.J. Div. of Youth & Family Servs. v. K.A.</u>, 413 N.J. Super. 504, 510 (App. Div. 2010) (quoting <u>State v. T.C.</u>, 347 N.J. Super. 219, 239–40 (App. Div. 2002)). However, when punishment exceeds "what is proper or reasonable," it is deemed excessive. <u>Id.</u> at 511. This determination must focus on the harm caused to the child, not the parent's intent. <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 N.J. 328, 344 (2010); <u>K.A.</u>, 413 N.J. Super. at 511.

A-3991-19

In determining whether corporal punishment is proper or reasonable, careful consideration must be given to the "nature and extent of the injuries" and the "instrumentalities used to inflict them." S.H., 439 N.J. Super. at 146. Courts also will consider "(1) the reasons underlying [the defendant's] action; (2) the isolation of the incident; and (3) the trying circumstances under which [the defendant] was undergoing . . . ." K.A., 413 N.J. Super. at 512. Age is an additional consideration: "one ought not assume that what may be 'excessive' corporal punishment for a younger child must also constitute unreasonable infliction of harm, or excessive corporal punishment in another setting involving an older child." P.W.R., 205 N.J. at 33. Finally, courts will consider whether the defendant recognized his or her error, was remorseful, and was open to receiving help. See S.H., 439 N.J. Super. at 147–48.

We gain further insight into the boundaries of proper and reasonable corporal punishment by closely examining the facts and circumstances arising in the foregoing legal precedents. In K.A., the defendant mother K.A. got into a homework-related altercation with her then-eight-year-old daughter A.A. 413 N.J. Super. at 505–06. A.A. was diagnosed with a pervasive developmental disorder and attention deficit disorder. Id. at 506. K.A. sent A.A. to her room for time out, but A.A. refused to stay inside, defying K.A.'s specific instructions.

Ibid. K.A. struck A.A. on the shoulder four or five times with a closed fist before sending her back to her room. Ibid. Round bruises resembling paw prints appeared on A.A.'s shoulder and were noticed by a classroom aide. Ibid. The Division made a final determination to substantiate allegations of abuse or neglect against K.A. Id. at 505.

We reversed the finding of neglect/abuse, noting that K.A. had a "psychologically disruptive child, unable or unwilling to follow verbal instructions or adhere to passive means of discipline such as time-out." Id. at 512. We noted K.A. had no support from a spouse or other family members to raise a developmentally challenged child—she was overwhelmed and acted in frustration. Ibid. She did not break any skin and A.A. did not require medical intervention. Ibid. We also noted "K.A. accepted full responsibility for her actions, was contrite, and complied with Division-sponsored counseling." Ibid.

In C.H., the parent struck her then-five-year-old child with a paddle in multiple locations, leaving behind three to four-inch red demarcations on her face. N.J. Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414, 416 (App. Div. 2010). We sustained the finding of excessive corporal punishment, determining it was not an isolated incident, as the parent admitted to administering corporal punishment to the child when she was three years old.

12

Id. at 417. Furthermore, the parent did not show remorse and did not participate in counseling. Id. at 416–17.

In P.W.R., the Supreme Court reversed our affirmance of the trial court's finding of abuse and neglect. 205 N.J. at 40. The Division had previously determined that allegation of physical abuse was unfounded, though the allegation of neglect was substantiated. Id. at 27. The parent in that case occasionally slapped the sixteen-year-old daughter in the face as discipline. Id. at 23–24. The slaps did not leave behind marks. Id. at 36. The Court held:

> [a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute 'excessive corporal punishment' within the meaning of N.JS.A. 9:6-8.21(c)(4)(b). That is not to suggest approval of such behavior. But, by qualifying the prohibition with the term, 'excessive,' the statutory language plainly recognizes the need for some parental autonomy in the child-rearing dynamic that, of necessity, may involve the need for punishment.
> [Id. at 36.]

K.A., C.H., and P.W.R. underscore the highly-fact-sensitive analysis required in child abuse and neglect cases and offer benchmarks to determine whether a parent or legal guardian has crossed the line from proper and reasonable discipline into the realm of excessive corporal punishment. Applying these guiding principles to the present case, we conclude the evidence

adduced at the factfinding hearing supports the Family Part's finding of excessive corporal punishment.

The June 15, 2018 incident was not an impulsive, spontaneous reaction as in K.A.. Rather, defendant acknowledged she had received information regarding J.H.'s poor behavior from the school in the afternoon. She waited for him to return home from the afterschool program and prepare for bed before striking him with the belt. The corporal punishment was planned and not done in spontaneous frustration based on the child's misbehavior committed immediately before corporal punishment was administered.

Second, this was not an isolated incident. Defendant admitted that she "spanked" J.H. three times with his belt. Other family members corroborated that defendant employed corporal punishment on multiple occasions.

The trial court, moreover, recognized and accounted for other relevant considerations. The court, for example, considered J.H.'s age as in P.W.R. The court also acknowledged J.H.'s behavioral problems and the challenges they posed to defendant to maintain discipline and to discourage misbehavior.

Importantly, the court also accredited the expert testimony of Dr. Lanese, and carefully examined the photographs depicting the wounds that had recently been inflicted. Looking at the photographs in evidence, the judge remarked the

14

child "got whipped." Those marks, considered in context with other relevant considerations, support the conclusion that the belt strikes were not proper and reasonable in the circumstances. K.A., 413 N.J. Super. at 511–12.

We add that the court did not focus on defendant's intentions, but rather properly focused on the harm to the child. See M.C. III, 201 N.J. at 344. The trial court remarked,

> There's no question that [defendant] used a soft object, such as a belt, which [J.H.] indicated was what he was hit with and made contact with [J.H.'s] body. Whether she intended to hit his legs, but made contact with his back, is of no moment to the [c]ourt. The fact that she struck him multiple times, leaving the markings on his back, that they hurt him, and leaving the markings on his arms, those are, to the [c]ourt, uncontroverted.

Based on all of the evidence adduced at the hearing, the court concluded,

> The [c]ourt finds that this type of punishment is excessive corporal punishment, and the [c]ourt finds that the Division has met its burden of proof by a preponderance of the competent, relevant material evidence. As indicated in other case law, the [c]ourt need not wait till the child is actually harmed for there to be abuse and neglect
>
> In this case, I'm not prepared yet to find that there's been a psychological harm caused as a result of the corporal punishment inflicted. There's no testimony there was continued punishment which might lend itself to the potential of psychological or physical harm to [J.H.]. But I am satisfied that this is beyond mere

15

acceptable corporal punishment. This punishment inflicted upon [J.H.] meets squarely the definition of excessive corporal punishment and, for that, the [c]ourt will enter a Title 9 finding as to [defendant].

We agree.

### III.

We next address defendant's contention she was denied counsel at critical proceedings. It is well-settled a parent has a fundamental and constitutional right to effective assistance of counsel in Title Nine cases. N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 113 (2011) (noting that "children and indigent parents in . . . Title Nine . . . proceedings are entitled to representation by the Office of the Public Defender."); see also N.J. Div. of Child Prot. & Permanency v. L.O., 460 N.J. Super. 1, 3 (App. Div. 2019) ("Because the potential consequences of [child abuse or neglect] proceedings are of significant magnitude, we agree that, in this setting, counsel should be made available for indigent parents and guardians both at the administrative level and in any appeal of right to this court.").

N.J.S.A. 9:6-8.43(a) requires a Family Part judge to advise a defendant in an abuse or neglect proceeding of the right to counsel and, if the defendant is indigent, the ability to apply for representation through the Office of the Public Defender. To qualify for Public Defender representation, a defendant must fill

out a "Form 5A." <u>N.J. Div. of Youth & Family Servs. v. L.M.</u>, 430 N.J. Super. 428, 437 (App. Div. 2013).

Defendant claims on appeal that "[t]hrough the eve of a fact-finding trial, [defendant] had no attorney and lacked the expertise or knowledge necessary to defend herself." Defendant further asserts, "through no fault of her own, [she] had no ability to investigate or present a defense." These claims are contradicted by the record. Defendant was informed of her right to counsel on at least two separate occasions. On June 28, 2018, the court convened an OTSC hearing on the issue of temporary custody. Defendant and two codefendants all appeared without counsel. The court noted that court personnel had asked them if they wanted to fill out a Form 5A and the court confirmed on the record that they each intended to represent themselves at the OTSC hearing.

The fact-finding hearing originally was scheduled for October 18, 2018. Defendant and codefendants once again appeared without counsel. At the start of the hearing, the court reminded defendant she had the right to an attorney, and informed her that

> [a]n attorney does not represent you unless that attorney sends a Letter of Representation to the Court. If you cannot afford an attorney, you can fill out a form and the [c]ourt will determine whether or not you're qualified for the appointment of a [c]ourt-appointed attorney to represent you in the matters, or you can

proceed on your own, which is referred to as pro se, without the aid of an attorney.

We're going to proceed in a limited capacity today, but if at any time during the pendency of this litigation, you determine you'd want to retain an attorney or have a [c]ourt-appointed attorney for you, just let the [c]ourt know. Okay?

The judge asked defendant whether she understood what he had just explained, and defendant replied "Yes." The Deputy Attorney General representing the Division interjected, advising the court, "I think that [defendant] filled a [Form] 5A out today." Defendant confirmed that she had submitted the form. The court responded, "Okay. So what we're going to do with respect to your matter, we're going to postpone that aspect so you can consult with your attorney on this matter. Okay?"

The matter was adjourned for four months to allow defendant's court-appointed attorney ample time to prepare. In these circumstances, we reject defendant's contention that she was deprived of the right to appointed counsel.

IV.

Finally, we turn to defendant's contention she received ineffective assistance from counsel who was appointed to represent her at the factfinding hearing. The Appellate Division has adopted the Strickland/Fritz standard for ineffective-assistance-of-counsel in criminal matters, termination of parental

18                                                              A-3991-19

rights cases, and for findings of abuse and neglect. <u>N.J. Div. of Youth & Family Servs. v. M.D.</u>, 417 N.J. Super. 583, 613–14 (App. Div. 2011); <u>N.J. Div. of Youth & Family Servs. v. N.S.</u>, 412 N.J. Super. 593, 643 (App. Div. 2010). We thus apply the <u>Strickland</u>/<u>Fritz</u> two-pronged test to defendant's contention she received ineffective assistance at the factfinding hearing.

To meet the first prong of the <u>Strickland</u> test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 466 U.S. at 687. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. The fact that a trial strategy fails to obtain for a defendant the optimal outcome is insufficient to show that counsel was ineffective. <u>State v. DiFrisco</u>, 174 N.J. 195, 220 (2002) (citing <u>State v. Bey</u>, 161 N.J. 233, 251 (1999)).

The second prong of the <u>Strickland</u> test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. <u>Id.</u> at 694.

Defendant contends her trial counsel presented "little defense to the claim of excessive corporal punishment in the first place." We believe that characterization does not properly describe the situation at hand; counsel's performance does not constitute deficient representation but rather reflects the strength of the Division's case and the fact that most of the relevant circumstances are incontrovertible. Defendant's more specific claims of ineffective assistance lack sufficient merit to warrant all but brief discussion in this opinion. R. 2:11-3(e)(1)(E).

Defendant argues counsel should have objected to embedded hearsay in documents and the testimony of Dr. Lanese and Division caseworker Hatten. The record reflects the documentary evidence considered by the trial court was properly admitted. Each witness provided the foundation for the records they relied upon. See In re Guardianship of Cope, 106 N.J. Super. 336, 344 (App. Div. 1969) ("Reports . . . prepared by the qualified personnel of a state agency charged with the responsibility for overseeing the welfare of children in the State, supply a reasonably high degree of reliability as to the accuracy of the facts contained therein."). Rule 5:12-4(d) permits the Division to "submit into evidence, pursuant to N.J.R.E. 803(c)(6) and 801(d), reports by staff personnel or professional consultants." The Division's reports fall under the business

20

records exception found in N.J.R.E. 803(c)(6). See M.C. III., 201 N.J. at 347. We add the dangers of hearsay are mitigated at a bench trial. N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 349 (App. Div. 2016). Furthermore, Family Part judges are presumed to be capable of relying on evidence for its permissible purposes and are capable of discounting inadmissible embedded hearsay. Ibid.

Defendant contends her trial counsel was ineffective for "[n]ot being prepared to support his objection to Hatten's testimony on what, if any, instrument may have caused the marks depicted in photographs in evidence." But even accepting for the sake of argument the Division caseworker lacked qualification to opine on what instrument caused the markings depicted in the photographs of the child's wounds, the outcome of the hearing would not have been different had an objection been made and sustained. The trial court relied not only on Dr. Lanese's medical opinion as to the instrument employed but also defendant's admission to the Division that she used a belt to administer corporal punishment on this occasion.

Defendant contends counsel should have objected to what she characterizes as prejudicial comments made by the Deputy Attorney General in summation. On appeal, defendant argues her counsel should have objected to

21

remarks concerning defendant's absence from the second day of the fact-finding trial and her decision not to testify or present evidence. We conclude these comments had no effect on the judge sitting as the trier of fact.

Relatedly, defendant claims trial counsel rendered ineffective assistance by "[n]ot objecting to references to facts not in evidence" or to "things that never happened." By way of example, defendant contends the Division in its summation improperly argued the child "could have easily been hit in the face, in the eye, in the mouth.'" We see nothing inappropriate in commenting on the potential risk of physical harm associated with repeatedly striking a child with a belt, especially given defendant's acknowledgment that J.H. was resisting. Nor was it improper for the Division to argue in summation that defendant "laid in wait" for J.H. to come home. As we have noted, the fact the corporal punishment was planned—rather than administered in spontaneous frustration—was a relevant circumstance for the court to consider. See K.A., 413 N.J. Super. at 512.

Finally, we address defendant's contention her trial counsel's closing argument was deficient because it "spanned less than a page of transcript." We reject the notion that brevity suggests professional incompetence. The maxim "less is more" is often applicable to the courtroom setting. Moreover, in

22

applying the <u>Strickland</u>/<u>Fritz</u> test we afford substantial deference to such strategic decisions. <u>Cf.</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751–52 (1983) (noting that the hallmark of effective appellate advocacy is the ability to "winnow[] out weaker arguments and focus[] on one central issue if possible, or at most, on a few key issues"). We note in closing that defendant fails to suggest additional arguments counsel might have mustered in summation that would have turned the tide of the evidence of excessive corporal punishment.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3991-19