# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0300-21

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

J.C. and W.D.,

 Defendants,

and

L.T.,

 Defendant-Appellant.

_____

IN THE MATTER OF E.C.,
L.T. and A.D., minors.

_____

Submitted September 14, 2022 – Decided September 20, 2022

Before Judges Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FN-01-0114-17.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; John J. Lafferty, IV, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors E.C. and L.T. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Julie Goldstein, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant L.T.[1] appeals from the Family Part's June 29, 2021 order[2] determining that he abused or neglected his five-year-old son E.C. (Ethan) by striking and bruising the child after Ethan told defendant's girlfriend that defendant had been with another woman. Defendant challenges the trial judge's finding that this conduct constituted abuse or neglect under N.J.S.A. 9:6-

---

[1] We refer to defendant and other family members by initials or fictitious names to protect their privacy. R. 1:38-3(d)(12).

[2] This order became appealable as of right after the trial court entered an order terminating the litigant on October 18, 2021.

A-0300-21

8.21(c)(4)(b) and N.J.S.A. 9:6-8.21(c)(1). The Law Guardian supports the judge's finding that the Division of Child Protection and Permanency (Division) met its burden of proving abuse or neglect by a preponderance of the evidence. Based upon our review of the record and applicable law, we affirm the judge's determination that defendant abused or neglected Ethan by using excessive corporal punishment and by creating a risk of protracted impairment of the child's physical or emotional health.

Defendant is the biological father of Ethan and his younger brother, Lo.T. (Luke). The Division was involved with defendant and Ethan's biological mother for several years. Ethan's maternal grandmother, J.C. (Jen), had physical custody of Ethan and Luke between 2018 and August 2020. Beginning on August 17, 2020, defendant began to have parenting time with his sons on the weekends.

Just one month later, Jen observed bruises on Ethan's shoulder, face, and buttocks. Jen testified that Ethan "had bruising on his face. He had red handprints on his face. He had a bruise on his arm . . . [and] on his bottom." Ethan told Jen that defendant hit him because he lied to defendant's girlfriend about defendant being with another woman. Jen stated that Ethan was "scared to death" and told her that he "never want[ed] to come back [to defendant's

home] again." Jen took Ethan to the hospital and reported the child's injuries to the Division.

The next day, Jada Andrews, a Division investigative worker, visited Ethan at Jen's home. Ethan explained that his father hit him and pointed to the left side of his face, arms, and buttocks. Andrews performed a body check of Ethan and observed bruising on the left side of the child's face, on his left arm, and on his buttocks. Andrews took photographs to document these injuries and these exhibits were admitted in evidence.

Dr. Laura Brennan, a child abuse pediatrician at NJ CARES,[3] examined Ethan about ten days later. Ethan told Brennan "his father hit him with his hands because he lied" and that "he got bruises on his face, his arm, . . . his leg, [and] his butt . . . ." Brennan testified that she could not see any visible bruises on the day of her examination, but she reviewed the photographs of the child's injuries and also spoke to Jen prior to examining Ethan. Brennan prepared a written report in which she recommended that the Division "investigate the allegations and make any necessary placement determinations and visitation plans so as to ensure [Ethan's] safety." Brennan recommended that Ethan receive

---

[3] Brennan qualified as an expert in child abuse pediatrics at the fact-finding hearing.

A-0300-21

psychotherapy and counseling, and that the Division refer defendant to appropriate counseling services.

Elizabeth Stuart, a Division permanency and resource supervisor, testified that defendant did not want to engage in the Division's recommended services because he stated he was not learning anything. Defendant told Stuart he would continue to use physical discipline on his children because "it was a cultural thing" and "he believed in spanking . . . ."

Defendant called Stuart the day before the fact-finding hearing. He referred to Ethan by using a racial slur. Stuart asked defendant if he felt it was wrong to strike his son and bruise him. Defendant replied, "[Ethan] got a bruise on his F-ing ass when I whipped his ass. He didn't have no broken bones. I didn't use no belt. I used my hand and hit him on his butt. He went to the hospital and released the same night."

Amber Chastine, a mental health services therapist, testified that she began seeing Ethan shortly after the beating. When Chastine questioned Ethan about defendant, the child became tearful, failed to make eye contact, and hid under a blanket. Thereafter, Chastine began seeing Ethan two hours per week for intensive in-home care. The child told Chastine he did not want to visit with

5

defendant. Chastine diagnosed Ethan as suffering from post-traumatic stress disorder (PTSD).

Defendant testified on his own behalf. He stated he "grabbed [Ethan] by his arm, turned him around and just beat him on his butt." Defendant admitted he "got angry" because Ethan told his girlfriend he had been with another woman. Defendant stated he struck Ethan to teach him not to lie. He denied hitting the child in the face or bruising him, and claimed he felt "bad about the incident that happened." However, defendant admitted he would "probably" beat the child again if he lied.

At the conclusion of the hearing, the trial judge rendered an oral decision, finding that the Division had established by a preponderance of the evidence that defendant's conduct constituted excessive corporal punishment on a five-year-old child. The judge noted that defendant struck Ethan repeatedly and left bruises on several parts of his body. The judge also found that defendant's physical abuse caused Ethan to suffer emotional harm that required him to undergo therapy. This appeal followed.

On appeal, defendant argues that the trial judge incorrectly concluded that defendant's action in striking his five-year-old son multiple times with an open hand was excessive corporal punishment and impaired the child's emotional

6

health. Defendant also asserts the judge erred by considering the "net opinions" set forth in Brennan's written report. We disagree.

Our task as an appellate court is to determine whether the decision of the family court is supported by substantial credible evidence in the record and is consistent with applicable law. Cesare v. Cesare, 154 N.J. 394, 412 (1998). We owe particular deference to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise." Id. at 413. Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Through the admission of "competent, material and relevant evidence[,]" the Division must prove by a preponderance of the evidence that the child was

abused or neglected. N.J.S.A. 9:6-8.46(b). In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(b) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .

Each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive" and "idiosyncratic." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). Both the nature of the injury inflicted and the conduct should be reviewed within the context of the family's circumstances at that moment. See Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414, 416 (App. Div. 2010).

"'[E]xcessive corporal punishment" entails physical punishment that results in "bruises, scars, lacerations, fractures, or any other medical ailment suffered as a result of [a parent's] actions." P.W.R., 205 N.J. at 35-36. Courts focus on "the harm suffered by the child, rather than the mental state of the accused abuser," and a single occurrence of corporal punishment may be deemed

excessive. <u>Dep't of Children & Families v. K.A.</u>, 413 N.J. Super. 504, 511 (App. Div. 2010).

For example, in <u>New Jersey Division of Youth & Family Services v. M.C. III</u>, 201 N.J. 328, 333-35 (2010), the defendant chased down his two teenage children, caught and grabbed them, and all three ended up on the floor. Both children were injured. <u>Id.</u> at 335. One child sustained a bruised and swollen hand, while the other had rib tenderness and an abrasion behind the ear. <u>Ibid.</u> The Supreme Court held that, although the defendant "may not have intended to harm his children, his actions were deliberate" and constituted abuse because he "intentionally grabbed the children and disregarded the substantial probability that injury would result from his conduct." <u>Id.</u> at 345.

Similarly, in <u>C.H.</u>, we found that a mother who struck her five-year old child with a paddle for telling a neighbor the family did not have electricity in their home had inflicted excessive corporal punishment. <u>C.H.</u>, 416 N.J. Super. at 416-17. The mother admitted to using corporal punishment since the child was three years old, and she struck the child once or twice a month "as her way to ensure that [the child] would not 'end up on the streets or doing drugs.'" <u>Id.</u> at 417. In the incident which led to the Division's involvement, the child sustained three- to four-inch red marks on the right side of her face, two-inch

A-0300-21

dark red scratches on her elbow and left cheek, and a greenish mark on her back. Id. at 416. On the other hand, in P.W.R., the Supreme Court concluded that "[a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute 'excessive corporal punishment[.]'" P.W.R., 205 N.J. at 36.

Here, there was ample evidence to support the trial judge's determination that defendant abused or neglected his five-year-old son by striking him on the face, shoulder, and buttocks, causing the child to receive bruises on several different parts of his body. Defendant admitted "beating" his son, and Ethan's injuries were corroborated by the testimony of Jen who discovered the bruises; Andrews, who took photographs that graphically depicted the child's injuries; and Brennan, the Division's child abuse pediatrician.

Defendant argues that unlike the defendant in C.H., he expressed remorse for his actions. However, defendant denied bruising the child, and continued to maintain that he would "probably" strike Ethan again if he lied. Defendant also did not complete the services needed to address his future behavior. Moreover, we have long observed that even "a single incident of violence against a child may be sufficient to constitute excessive corporal punishment[,]" K.A., 413 N.J. Super. at 511, particularly where, as here, it results in physical injuries such as

bruises. P.W.R., 205 N.J. at 35-36. In addition, a caregiver's post-incident conduct does not excuse past abuse or neglect, and case law requires us to look at both the risk of harm as of the time of the abuse and also at the time of the hearing. See Dep't of Children & Families, Div. of Child Protection & Permanency v. E.D.-O., 223 N.J. 166, 189 (2015).

The judge's finding that defendant's actions caused Ethan emotional harm is also strongly supported by the record. Stuart concluded that the child suffered from PTSD and would continue to need emotional support services. Contrary to defendant's argument, the judge also properly admitted Brennan's written report in evidence because it was based upon her personal observations and the information she gathered from Jen and the photographs of Ethan's injuries. See Townsend v. Pierre, 221 N.J. 36, 53 (2015). Under these circumstances, we discern no basis for disturbing any of the trial judge's determinations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11